Okay, this is a case of the people versus Jonathan Martin 1220252. Our procedure is as follows. First, we let the appellant speak for approximately 15 minutes, then we ask questions. Normally, we don't interrupt. Then we let the appellee proceed and then the closing. You have before you Justice Mary Ellen Coughlin, Justice Terry Levin, and Justice James Fitzgerald Smith. With that, the appellant may proceed. Thank you, your honors. My name is Catherine Pollack. I'm an assistant public defender. I'm here for Mr. Martin. Before you start, let me just put in one little short line. I want you to emphasize whatever you're going to do or say on intent, because we have four legislators, Senator Cullerton, Senator Dillard, State Rep Turin, and Durkin, all of which said that 4.5 does not affect or have anything to do with and that there were no changes from 2009. Sure, I can start with that then. So I want to start by saying that it's our position that getting to legislative history in this case is not appropriate because the plain language of the statute is clear. The plain language of the statute in question 25. I have a question for you later. I've got the last part of the statute that will contradict you on that, but go ahead. Okay, no, but our position is that the plain language is clear and that it directs us to consult Article 5 of Chapter 5 of the Unified Code of Corrections in its entirety without specifying excluding those provisions relating to sentencing credit. So our position is that it's not appropriate to look at legislative history when the language is clear on its face as it is here. But I understand the question that your honors are asking. And if you do look at the legislative history and the portions of it cited in the state's brief, I would just say this, and that is that those kinds of comments by state legislators are one possible tool of construction when a statute is ambiguous, but they are not dispositive. The law presumes that where a statute has been amended by the legislature as it has been here, that a change was intended. That is a rebuttable presumption, of course, but when you look at the comments from those four legislators, yes, they say that it was intended as a reorganization bill, but in truth, that's not what it was. That's not what happened here. So when you look... I'm going to just think how to say this. Prior to 2009... I'll start this way. Take your time. I see you're off. No, no, it's fine. This is my first time here, so I'm in my head. The change that is at issue here, the amendment that I talked about in my brief, is not the only change that this particular piece of legislation made to Article 5 of Chapter 5, which is the piece of legislation in question. Prior to 2009, if you were found unfit and if you were then civilly committed, we lawyers were directed to Section 581 of the Unified Code of Corrections to determine how long you could be held for. Prior to 2009, Section 581 of the Unified Code of Corrections contained, as I mentioned, no reference to truth in sentencing, but also no reference to extended term sentencing, no reference to concurrent or consecutive sentences. So prior to 2009, an unfit defendant could not be committed to an extended term, could not be committed to a consecutive term, and could not receive sentence credits because those three provisions were not in Section 581 of the Unified Code of Corrections. But then in 2009, the legislature passed this omnibus bill, and they included all three of those things in the new version. So now, after 2009, we're directed to look at Article 4.5 of Chapter 5 of the Unified Code of Corrections, and now it contains a reference to truth in sentencing, but it also contains extended term sentencing. It also includes concurrent and consecutive sentences. Those are substantive changes. These are not typos. And a ruling today that says that the legislature intended no change, no substantive change when they passed this bill in 2009, that would also mean that basically the law for civilly committed people remains as it was prior to 2009, which means that not only would we lawyers be ignoring the provision related to truth in sentencing, we'd be ignoring provisions related to consecutive sentences. We'd be ignoring provisions related to extended term. So, yes, those were the comments made by the legislators. But as I said, they're not dispositive, and they're not correct. You can't get around the plain language of what they did. And I think that the issue before your honors today is, does the law in Illinois mean what it says? I got another question. In Section 990B of Article 4.5, it specifically says a provision of this Article 4.5 or any other provision of this amendment to react of the 95th General Assembly that is the same or substantially the same as the prior law shall be construed as a continuation of the prior law. And not a new or different law. And that's Section 4.5-990B. Yes. So I can address that as well. What that says is, as your honor just read, any section of the Amendatory Act that is the same or substantially the same as a prior law shall be construed as a continuation of that prior law. As I just explained, with regard to the treatment of unfit, civilly committed people, the laws in question are not the same or substantially the same as a prior law. Whatever was said by the legislators when this bill was being discussed, what actually happened was they clearly passed a law that now, post-2009, incorporates truth in sentencing, consecutive sentencing, and extended term sentencing. That is a substantive change. And the section that your honor just read, that just says that a section that is the same or substantially the same as a prior law shall be construed as a continuation. Article 5.4.5 of Chapter 5 is not the same or substantially the same as the law in effect prior. It is not the same or substantially the same as 5-8-1, because it adds those three extremely important provisions that weren't there before. Prior to 2009, if you were found unfit and you had a Class 2 felony, you know, the most you could get was seven years of commitment. After 2009, because the statute was amended, you can now get up to 14 years. It could be consecutively served with a different sentence, and you could get sentence credits. Those three things are substantive important changes. So, our position then is that Section 5-4.5-99DB applies to provisions of the law that were not substantively changed, but the provision of the law in question for us was substantively changed. Go ahead. Okay. So, I want to just then go ahead and address a few of the state's other arguments. So, I want to start, I guess, by clarifying too. On page 11 of the state's brief, I think the state unintentionally mischaracterized our argument. They wrote that we were reading a tenuous ambiguity into the statute, into 25-G-4. We're not. Our position is that that law on its face is clear, and that there is no need to consult extrinsic sources of statutory construction. Although, even if you did, as here, looking at the legislative history and what the legislature actually did, they made substantive changes. This was not an oversight. They changed important things. But our position is not that that statute is ambiguous. It's clear. Reading the statute, it says, this is the new version, the maximum sentence to which a defendant would have been subject had he be convicted at a criminal proceeding. For purposes of this section, the maximum sentence shall be determined by Section 5-8-1 or Article 4.5 of Chapter 5 of the Unified Code of Corrections. That is clear on its face. And the state's position requires your honors to read language into that statute that isn't there. They read that section as including a clause that says, look at Article 5, 4.5 of Chapter 5, excluding any provisions related to sentence credits. But I presume, I don't want to speak for them, but I presume they would say, but including consecutive sentencing and including extended term. And as I mentioned before, I don't think you can just pick one of those changes and say that that one change was an accident, but the other two were intentional. So the language itself, though, is clear. There is no exception written by the legislators. If they had wanted us as lawyers to exclude sentence credits, they would have said exclude provisions related to sentence credits. So then, I'm sorry, a few of the state's other arguments. You know, they mentioned that Section 25-G-4 doesn't contain a reference to truth in sentencing and that, therefore, it doesn't apply. To that I would say, of course, it does. It contains a reference to Article 4.5 of Chapter 5, which incorporates truth in sentencing. The fact that the words truth in sentencing don't appear in Section 25-G-4 doesn't mean that they are not included. Our code is replete with examples of statutes incorporating other statutes by reference. There is no law that says you have to copy and paste the full text of one statute in order to apply it to another. So the fact that we have not the words truth in sentencing here, but rather a reference to a sentencing code that includes truth in sentencing does not mean that the plain language here does not require sentence credits. And I know I keep talking about these other two sections, consecutive and extended term sentences, but when you look at Article 4.5 of Chapter 5, those two things are also referenced by statutory citation in Article 4.5 of Chapter 5. So the fact that the words themselves don't appear doesn't mean that they're not included in the current statute. They also contrast the Civil Commitment Statute 25-G-4 with language that relates to people who are found not guilty by reason of insanity. And I understand the law in Illinois. People who are found unfit are differently positioned than people who are found not guilty by reason of insanity. So certainly, if the legislature had intended post-2009 that those groups be treated differently, they could be constitutionally. We're not raising any kind of equal protection claim. But the fact of the matter is that the legislature is also allowed to have them treated the same with respect to sentence credits if they want to. And the language that we have here in the statute has been being treated the same. The fact that slightly different phrases were used is of no moment. For people who are not guilty by reason of insanity, it was the 93rd General Assembly who passed the most recent version of that particular statute. And in that case, they chose to describe sentence credits as basically for sentence credits, the maximum length of time a defendant would have been required to serve, less credit for good behavior. So they used the phrase less credit for good behavior when talking about how to deduct sentence credits for insane people. The 95th General Assembly passed the statute in question in our case, 25-G-4, and instead of using the phrase less credit for good behavior, they used the phrase, please consult, basically, Article 4.5 of Chapter 5 of the Unified Code of Corrections to determine the maximum period of commitment. Those are two different ways of saying the same thing. The state's argument that somehow the language that was differently used in each statute is important, that argument would be true if Section 25-G-4 contained no reference to a sentencing code that talked about sentence credits. But because it does, these two phrases mean the same thing. And then I think just two more points. So the state also mentions that truth in sentencing can only apply to people who have been convicted of crimes because the Uniform Code of Corrections defines a committed individual as somebody who has been convicted or adjudicated delinquent. To that, I would say that that's not true. We all know that people who are acquitted, who are found not guilty by reason of insanity, they have truth in sentencing applied to their sentence. The phrase in the not guilty by reason of insanity statute, less credit for good behavior, the only way for a lawyer to determine what credits for good behavior are applicable is to consult truth in sentencing, which, yes, was originally written as a statute for people going to prison or convicted of a crime. But because people who are found not guilty by reason of insanity, their sentence has to be equal to what they would serve if convicted, it makes sense that you would then be consulting a statute written initially for convicted people. And because they get credit for good time, it makes sense that you would also be consulting truth in sentencing, which was originally written for people who were found insane. And the same is true for people who are civilly committed because they are unfit. We have, with people who are unfit, a directive to basically find out what the maximum sentence a person convicted of a crime would serve. And the only way to find the maximum sentence that a person convicted of a crime would serve is to consult the Code of Corrections, which is written for people convicted going to prison. So, sorry. And then, lastly, just as a practical matter, I know at the trial level, the trial court judge made some comments about how good time credit could not be applied, essentially by a trial court, because the trial court judge doesn't have an understanding of how a particular individual would comport themselves while serving a sentence. And to that, I would say that it's done for people, it's not administratively impossible. It's done for people who are found not guilty by reason of insanity. When somebody is committed to DHS because they're insane, they're given a theme date by the trial judge, which has good time credits already subtracted. And the reason why that's done is because the law presumes that people are going to get these credits. I understand the state's position that when you're sentenced to seven years, the sentence is seven years. But there's a sentence of seven years, and then there's a sentence that you serve. And the question for your honors is for people who are found unfit, are they to be serving the sentence, in this case, seven years, or are they to be serving the sentence that they would actually serve if going to prison? And we believe that the way the statute is written now is that what we are supposed to do is subtract good time credits, and the sentence that they are going to DHS for is the sentence they would have served, which means less good time. That's what's done for people who are found not guilty by reason of insanity. And interestingly enough, it's pretty much also what's done for people who are convicted of a crime. When you are convicted of a crime and you are sane, the judge sets your release date, or the judge gives you your sentence. When you go to DOC, DOC calculates your release date upon admission. And when they calculate your release date, they subtract the good time credits off the bat. Those credits are presumed to be yours, and they are yours to lose. So you are presumed to get good time credits, like 85% or 50% right off the bat. If IDOC wants to take them away from you, they have to bring charges, and they have to go before the Board of Prisoner Review to actually prove why you should lose those credits. So this is not something that is earned day for day in prison, where you're having a hearing, where the jail or the prison decides if you behaved yourself and if these credits should be bestowed upon you. They are yours to lose. You have them unless IDOC can prove that they should be taken away. That's how prison treats these credits. That's how people who are found not guilty by reason of insanity have these credits treated. So we don't believe there's any kind of administrative roadblock to applying them to people who are found unfit. If there are no questions, I would yield to the state and reserve some time for rebuttal. Questions? I have some questions. Your argument really pertains, you're making the assumption that every single defendant that's involved in these procedures is going to be involuntarily committed to a facility. But that doesn't always happen. And in your arguments, how do you justify everything that you've just said to us with someone who, for example, might be receiving outpatient treatment? So to that, I would say that it's the same procedure that's used administratively as for people who are found not guilty by reason of insanity. But it's not the same. It's absolutely not the same. But I'm saying that it could be because if you're found not guilty by reason of insanity, sometimes you're committed to Elgin, right, to be treated in an inpatient basis. But there's also outpatient treatment for people who are insane. I'm sorry. Go ahead. No, and so it would be the same here. If you are found unfit, then yes, there's a hearing about whether inpatient or outpatient treatment is applicable, which is also what happens to people who are insane. And the maximum period of commitment is the same, even for people who are not guilty by reason of insanity, if they are not treated on an inpatient basis, and if they are given outpatient treatment, their theme date still subtracts good time. You're calling it a theme date, and it is a theme date for adjudications, for example, NGRI. But it's not a theme date for defendants who have not been convicted of a crime. But I don't know what you call it, but it's an extended period of treatment. And if during that extended period of treatment, they become fit, then they can go to trial. I mean, isn't that really the whole purpose of this, to determine how long of a time frame the state gets to prosecute someone who's been charged with a crime under these circumstances? Yes, I mean, I think that the issue is if you... And let me just ask this question. And if ultimately they are convicted of a crime, then they do get all their good time, right? If they are convicted of a crime, they do get all their good time. Yeah, no, that's true. And you're making no distinction for someone who the statute says is to be treated the same as someone who's civilly committed. I'm sorry, can you repeat that last question? Okay, let me give you the exact provision I'm looking at. The section that says that once they're involuntarily committed, they're to be treated the same as any other person who's civilly committed. Yes, but I don't think that that means that they don't... I don't think that that means that the language of the statute doesn't say they get good time. I think that, as I mentioned, I understand there's this distinction between people who are unfit and people who are insane. And I understand that's your position, but there's no authority in support of that, right? I'm sorry, in support of... In support of your construction that you think that... What you've just said. I mean, there's no authority that says that, right? Well, I mean, I think the authority is the plain language of the statute and the fact that... Beyond that. Beyond that. I mean, there is no authority right now saying that people who are unfit get this kind of good time credit. But there is also no authority saying that people who are unfit don't. Because I think the two cases that have most recently addressed the issue addressed a pre-amended version of the statute. I'm pretty impressed by your knowledge of the statute, because I got to tell you, it's pretty confusing to read it. And I would just ask for your assistance in section... G3, where it says, if a defendant is not committed pursuant to this section, he or she shall be released. So theoretically, someone who was in those parameters could be released prior to any time frame that someone who was just a regular person convicted of a crime would be subject to. In other words, he could get out sooner than anybody who's getting all the good time that you're talking about. Yes, if there's somebody who was not committed, then my argument wouldn't apply to that person. My argument only applies to people who have been civilly committed under 25 G2 and to the judge who then has to determine how long to hold them for. Okay, thank you. Any further questions? Nope. Okay, state, you may proceed. Please, court. Assistant State's Attorney, Kimberly Reeve, R-E-E, V as in Victor, E, on behalf of the people of the state of Illinois. I want to go ahead and direct the first point of my argument for the plain language. It does not contain anything besides just this mere reference to Article 4.5. This is just concerning general sentencing provisions. And it's clear that they added this reference to Article 4.5 since Section 581, which previously contained these sentencing provisions, no longer contain those provisions. So they had to connect the dots somehow for all of us to be able to easily figure out what our sentencing ranges are to be able to determine a maximum commitment period. If the legislator now intended to apply this good time credit, then it could have included a provision saying less good time credit and made it exactly clear like it did for the defendants found not guilty by reason of insanity, but it did not. This is especially true when it's presumed that the legislator had access to both the two cases that said that good time credit doesn't apply, the pre-amendment. And even if we consider this proposed train of thought of going from G4 to Article 4.5 to the truth and sentencing statutes, it only does apply, truth and sentencing only does apply to those convicted and sentenced to the Department of Corrections. It has been made clear that defendants that have been found not guilty by reason of insanity have gone through this trial process, have had, they are technically subjected to the Department of Corrections. And it's more of that their commitment into the Department of Human Services is more a tenant to that itself, which is why where they get the good time credit applied to them. Versus here, we don't have a conviction, defendant has not gone through the trial process because he's been unfit to stand trial. And he has not committed to the Department of Corrections, which is what the truth and sentencing, Department of Correction controls truth and sentencing. Defendants suggest that good comment credit is immediate and automatically attached to a sentence when a sentence is given. That is actually not true. It is not something that is immediate. It is not automatic. This has been found several times over the years. I cited the case people be Robinson from this court that even stated that is not a definite or immediate or automatic credit. It is something that is earned. So it's not something that can be immediately dealt out and then possibly taken away. It's something that has to be earned through rehabilitative behaviors. This also goes into the Williams case has full on extended this distinction between those that have gone through the trial process and those that have not. And I think that is the important distinction that we have here when looking at the statute is because we're not looking at so much of a conviction or not guilty by reason of sanity or a finding of not guilty. We're looking at whether they can stand trial. And so the purpose of the statute is to ensure that we are working to have a defendant able to stand trial and go through that trial process. So the overall purpose of Section G4 is to ensure that we're not going to be holding anybody unreasonably for extended crazy amounts of time forever indefinite periods is to give a distinct period of what we can do to try to get them to attain fitness. And I think it is important that we recognize that the public act that did amend all of these statutes did not intend any substantive changes. I think it's important that we recognize that it is a reorganization bill prior to 2009. Our sentencing statutes are very confusing haphazard. And so that is why they wanted to reorganize it to make it easy to find. So I think having Article 4.5 referenced now in this section for civil commitment is important just to make it further clearer of how we figure out sentencing and how we figure out commitment. I have nothing much else to add. I don't know if you guys have any questions for the state at all. I have one question. I don't know if you'll know the answer. I'm just curious. So, you, you can't extend the treatment period longer than the maximum sentence, whatever that may be right. As far as I understand, correct. Yes. So what happens if you, you, you get to that point and you're, you're a defendant, and you've exceeded the maximum sentence and you're still not fit, do you automatically get released. Is that what happens there, you do automatically get released. And as far as I know, through, I believe there's another section of the statute. I can't remember the exact section off the top of my head, but I think there is a portion that the state is allowed to petition for their treatment. If there is any potential harm or anything that can be, I guess that's what my question is getting to. Is it just that you can no longer prosecute the person anymore and they still can go and get civilly committed somewhere else pursuant to other provisions. Or do they just automatically get out and there's the person, even if they're still unfit and in need of services, they don't receive them. I'm just curious. Correct. Yes. As far as my reading of the statutes, that is correct. Yes. I guess you can go. Thank you. All right, just very briefly, I, I think the issue I'm having is that the state's position is that if the state's position is that these amendments in 2009 included intended no substantive change, and they were just for reorganization. Then my question, rhetorical, I suppose, for the state would be, okay, so does that mean since this was just a reorganization bill that people who are now unfit and committed cannot get extended term commitment periods. Their commitment period cannot be consecutive sentencing commitment period because before 2009. The longest they could be committed under the old version of the statute was for class 2, 3 to 7 years. Now, after 2009, we look at article 4.5 chapter 5, we're tasked with finding the longest term they could serve. If they were convicted of a crime, and now we're told that if they're extended term eligible, it's 14 years. And now we're told that if they have another crime that would run consecutive with the one they're being committed for. That that 14 years could be consecutive to a different period of time. So, if this was just a reorganization bill, do we ignore those two provisions and rather how is this just a reorganization bill, if it has effectively doubled the maximum commitment period for anybody who civilly committed. So, I think the legislature can talk all they want about how, oh, it's reorganization. Our code was so confusing, but we're lawyers. Right. And so my job is to look at the code and what it says. And when I'm told, go to article 4.5 of chapter 5 and find out how long this guy can go to prison for. I'm going to look and see, okay, is he extended term eligible. Oh, wow, he is 14 years. That's new. Does he have another crime that he could run consecutive with? Oh, he does. That's new. And so at some point, it just becomes absurd, right? It's an absurd reading of this new version of the statute to say that when it says go to article 4.5 of chapter 5, it means go to article 4.5 of chapter 5, excluding all the substantive changes that we made in 2009. Like, if the state's position is just that what the legislature meant to say was please consult the version of the law in effect in 2009, then that's what this law should say. And I think right now, the legislature, you know, it's not our place as courts to make the state's interpretation of this law. If this is not what the courts, what the legislature intended to do, they need to amend it. Because the plain language tells us that right now, if you're unfit, you can be committed for an extended term period. It can be consecutive to something else, and you get good time credits. And I just don't think there's a fair read of the plain language that excludes those three things. And I hear everybody's points about how people who are unfit are differently situated than people who are insane or convicted. I get that. And that's why I would 100% agree that if the legislature intended to and did, they could treat those two groups of people differently. But here they just haven't. Like the language treats them the same. And they are allowed to treat these two groups the same if they want to. They're allowed to treat them differently. There's policy reasons for doing it both ways. But I think at the end of the day, what we have here is a statute whose plain language made real substantive changes. And that basically, I suppose, accepting the state's argument today that no substantive changes actually happened would also mean going forward that unfit individuals who are civilly committed could not be committed for an extended term period and could not be sentenced consecutively with another offense. So that's all I have. And I thank you very much for your time. Any questions? No. All right. Thank you both. You both made interesting presentations, which don't agree on too many points, but that's what we expected on this. So you both did a very nice job. And I thank you for your time.